IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SESAME WORKSHOP,<br><br>                Plaintiff,<br>v.<br><br>THE PARTNERSHIPS and<br>UNINCORPORATED ASSOCIATIONS<br>IDENTIFIED ON SCHEDULE "A,"<br><br>                Defendants. | Case No. 25-cv-02501<br><br>**Judge Rebecca R. Pallmeyer**<br><br>**Magistrate Judge Young B. Kim** |

## DECLARATION OF PAUL VARLEY

I, Paul Varley, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am currently retained by Sesame Workshop ("Plaintiff") as a consultant. I am knowledgeable about, or have access to, business records concerning all aspects of the Plaintiff's brand protection operations including, but not limited to, its trademarks, copyrights, sales, online sales, advertising, marketing, media coverage, and associated international operations. I make this declaration from matters within my own knowledge save where otherwise stated.

3. Plaintiff, Sesame Workshop, was formed in 1970 and is a global impact nonprofit organization with its principal place of business in New York and is the owner of the trademarks and copyrights asserted in this action.

1

4. Sesame Workshop, originally known as the Children's Television Workshop, was founded by Joan Ganz Cooney and Lloyd Morrisett with the goal of producing educational television for children. Sesame Workshop's mission is to help children everywhere grow smarter, stronger, and kinder, and to reach families in more than 150 countries with playful early learning empower each generation to build a better world. Alongside educational television shows, digital content, and print materials, Sesame Workshop also engages in philanthropic funded initiatives and international outreach. However, the organization is best known for creating the iconic children's program *Sesame Street*, which premiered on November 10, 1969.

5. A longtime favorite of children and adults, and a pioneer of children's television, *Sesame Street* is a popular series that combines live-action, comedy, animation, and puppetry. Set on a fictional urban street, the program features a diverse cast of human characters and beloved Muppets, such as Elmo, Big Bird, and Cookie Monster. *Sesame Street* addresses a full gamut of age-appropriate lessons including literacy, numeracy, healthy habits, self-expression, empathy, and friendship. Additionally, the program promotes cultural diversity and inclusivity, promoting respect for different backgrounds and perspectives. Through its engaging characters and storytelling, *Sesame Street* fosters both cognitive and social growth in early childhood.

6. Over fifty years later, *Sesame Street* remains one of Plaintiff's most popular shows. *Sesame Street* garners over 15 million viewers every month in the United States, across all touchpoints, including broadcast, streaming platforms, and on Plaintiff's YouTube channel. Moreover, *Sesame Street* has been translated into 70 languages and has over 150 million viewers around the world in 150 countries. Some of the characters and character

names made famous by *Sesame Street* include, but are not limited to, but are not limited to:[1]

| | | |
|---|---|---|
| **Elmo** |  | |
| **Big Bird** | | |

---

[1] The characters contained within the table are not an exhaustive list of the characters embodied in Plaintiff's copyrighted works. This table is included only to provide examples of the characters found on the infringing products offered for sale or sold by Defendants. Regardless of any changes in their design, each of these characters, among others contained within Plaintiff's copyrighted works, have always maintained their distinctive qualities and unique elements of expression.

| | |
|---|---|
| **Cookie Monster** |  |
| **Grover** | |
| **Bert** | |



| Ernie | |
| --- | --- |
| Elmo | |
| Big Bird | |

| | |
|---|---|
| **Cookie Monster** |  |
| **Grover** | |
| **Bert** | |

| Ernie |  |

7. Since the release of the pilot, *Sesame Street* has amassed a large and dedicated fan base of both children and adults. As such, the program's ability to captivate and engage its viewers has led to widespread acclaim from viewers and critics alike. Notably, *Sesame Street* has (1) been inducted in the Television Hall of Fame in 1990; (2) won two Peabody Awards, an award held in high esteem within the media industry; (3) won several Grammy Awards for its original songs and albums related to *Sesame Street*; and (4) won over two hundred Emmy Awards—more than any other television show. These achievements reflect the show's recognition and influence on educational television.

8. Before Defendants' acts described herein, Plaintiff undertook a significant, ongoing licensing program resulting in the launch of numerous products bearing its famous SESAME STREET mark. Plaintiff has also registered a multitude of works related to the *Sesame Street* series and the characters embodied therein with the United States Copyright Office (the "Sesame Street Copyrighted Works"). The registrations include but are not limited to: "Elmo." (U.S. Copyright Registration No. VA0001693455), "Big Bird." (U.S. Copyright Registration No. VA0001693460), "Cookie Monster." (US Copyright

Registration No. VA0001693456), "Grover." (U.S. Copyright Registration No. VA0001693450), "Bert." (U.S. Copyright Registration No. VA0001693461), and "Ernie." (U.S. Copyright Registration No. VA0001693452) all issued by the Registrar of Copyrights on January 1, 2009.

9. The Sesame Street Copyrighted Works are registered with the United States Copyright Office. True and correct copies of the records from the U.S. Copyright Office website for the Sesame Street Copyrighted Works are attached hereto as **Exhibit 1**. The Sesame Street Copyrighted Works embody the distinctive characters found in paragraph 6 above. Since first publication, the Sesame Street Copyrighted Works have been used on Plaintiff's licensed products and are featured on Plaintiff's official websites, https://sesameworkshop.org/ and https://sesamestreet.org.

10. Plaintiff's authorized licensees market and sell a variety of Sesame Street branded products, including apparel such as shirts, sweatshirts, children's and infants' clothing; accessories such as backpacks and hats; books; drinkware; pillows and pillowcases; plushies; and toys (collectively, "Sesame Street Products").

11. Sesame Street Products have become enormously popular and even iconic, driven in part by the quality standards and innovative designs of Plaintiff's authorized licensees. Among the purchasing public, Sesame Street Products are instantly recognizable as such. The Sesame Street brand has become a global success and Sesame Street Products are among the most recognizable in the world. Sesame Street Products are distributed and sold to consumers by Plaintiff's authorized licensees, including PBS, Carters, Hanna Andersson, Hot Topic, Macys, and Target, through both websites and physical retail storefronts.

12. Plaintiff has continuously used the SESAME STREET trademark, and other trademarks, and has continuously licensed products for sale under its trademarks (the "Sesame Street Trademarks"). As a result of this continuous use as well as the fame and popularity of *Sesame Street*, strong common law trademark rights have amassed in the Sesame Street Trademarks. Plaintiff's use of the marks has also built substantial goodwill in the Sesame Street Trademarks. The Sesame Street Trademarks are famous marks and valuable assets of Plaintiff. Sesame Street Products typically include one of the Sesame Street Trademarks and/or Sesame Street Copyrighted Works.

13. The Sesame Street Trademarks are registered with the United States Patent and Trademark Office. True and correct copies of the federal trademark registration certificates for the Sesame Street Trademarks are attached hereto as **Exhibit 2**. The Sesame Street Trademarks are valid, subsisting, and in full force and effect, and some are incontestable pursuant to 15 U.S.C. § 1065.

14. The Sesame Street Trademarks are exclusive to Plaintiff and are displayed extensively on Sesame Street Products and in marketing and promotional materials. The Sesame Street Trademarks are also distinctive when applied to Sesame Street Products, signifying to the purchaser that the products come from Plaintiff and are manufactured to Plaintiff's quality standards. Plaintiff has ensured that its products bearing the Sesame Street Trademarks are manufactured to the highest quality standards.

15. The Sesame Street Trademarks are famous marks, as that term is used in 15 U.S.C. § 1125(c)(1) and have been continuously used and never abandoned. The innovative marketing and product designs of Sesame Street Products have enabled the Sesame Street brand to achieve widespread recognition and fame and have made the Sesame Street

Trademarks some of the most well-known marks in the entertainment industry. The widespread fame, outstanding reputation, and significant goodwill associated with the Sesame Street brand have made the Sesame Street Trademarks valuable assets of Plaintiff.

16. Products bearing the Sesame Street Trademarks have been the subject of substantial and continuous marketing and promotion by Plaintiff's authorized licensees. Plaintiff's authorized licensees, including PBS, Carters, Hanna Andersson, Hot Topic, Macys, and Target, have marketed and promoted, and continue to market and promote, the Sesame Street Trademarks to consumers through both websites and physical retail storefronts.

17. Plaintiff's authorized licensees have expended substantial time, money, and other resources in advertising and promoting the Sesame Street Trademarks. Specifically, Plaintiff's authorized licensees have expended substantial resources in advertising, promoting, and marketing products featuring the Sesame Street Trademarks. Sesame Street Products have also been the subject of extensive unsolicited publicity resulting from consumers' confidence that Sesame Street Products are of high quality, and trustworthy. As a result, products bearing the Sesame Street Trademarks are widely recognized and exclusively associated by consumers as being high-quality products sourced from Plaintiff. Sesame Street Products have become among the most popular of their kind in the world. The Sesame Street Trademarks have achieved tremendous fame and recognition, adding to the inherent distinctiveness of the marks. As such, the goodwill associated with the Sesame Street Trademarks is of immeasurable value to Plaintiff.

18. Sesame Street Products are sold only through authorized retail channels and are recognized by the public as being exclusively associated with the Sesame Street brand.

19. The success of the Sesame Street brand has resulted in significant counterfeiting of the Sesame Street Trademarks and infringement of the Sesame Street Copyrighted Works. Because of this, Plaintiff has implemented a brand protection program by investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores offering Unauthorized Products on online marketplace platforms like AliExpress.com ("AliExpress"), Amazon.com, Inc. ("Amazon"), eBay Inc. ("eBay"), ecrater.com ("eCRATER"), Focus Technology Co., Ltd. ("MadeInChina"), WhaleCo, Inc. ("Temu"), and Walmart, Inc. ("Walmart"), including the e-commerce stores operating under the Seller Aliases. The Seller Aliases target consumers in this Judicial District and throughout the United States.

20. I perform, supervise, and/or direct investigations related to Internet-based infringement of the Sesame Street Trademarks and Sesame Street Copyrighted Works. Our investigation shows that Defendants are using the Seller Aliases to sell Unauthorized Products, from foreign jurisdictions to consumers in the U.S. and elsewhere. I, or someone working under my direction, analyzed each of the e-commerce stores operating under the Seller Aliases and determined that Unauthorized Products were being offered for sale to residents of the United States, including Illinois residents. This conclusion was reached through visual inspection of the products listed on each e-commerce store, the price at which the Unauthorized Products were offered for sale, other features commonly associated with e-commerce stores selling counterfeit or infringing products, and because Defendants and their e-commerce stores do not conduct business with Plaintiff and do not have the right or authority to use the Sesame Street Trademarks or copy the Sesame Street Copyrighted

Works for any reason. Additionally, each e-commerce store offered shipping to the United States, including Illinois. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed are attached as **Exhibit 3**.

21. Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases; offer shipping to the United States, including Illinois; accept payment in U.S. dollars; and, on information and belief, sell Unauthorized Products to residents of Illinois.

22. Defendants concurrently employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via numerous methods, including credit cards, Alipay, Amazon Pay, PayPal, and/or Stripe. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use any of the Sesame Street Trademarks and/or to copy or distribute the Sesame Street Copyrighted Works, and none of the Defendants are authorized retailers of Sesame Street Products.

23. Many Defendants also deceive unknowing consumers by using the Sesame Street Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores to attract consumers using search engines to find websites relevant to Sesame Street Products. Other e-commerce stores operating under the Seller Aliases omit

using the Sesame Street Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Sesame Street Products.

24. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

25. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Unauthorized Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

26. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable common features such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Unauthorized Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Unauthorized Products were manufactured by and come from a common source and that Defendants are interrelated.

27. E-commerce store operators like Defendants communicate with each other through QQ.com chat rooms and utilize websites, like sellerdefense.cn, that provide tactics for operating multiple online marketplace accounts and evading detection by brand owners. Websites like sellerdefense.cn also tip off e-commerce store operators like Defendants of new intellectual property infringement lawsuits filed by brand owners, such as Plaintiff, and recommend that e-commerce operators cease their infringing activity, liquidate their associated financial accounts, and change the payment processors that they currently use to accept payments in their online stores.

28. Infringers, such as Defendants, typically operate under multiple seller aliases and payment accounts so that they can continue operation despite Plaintiff's enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Plaintiff.

29. Defendants are working to knowingly and willfully manufacture, import, distribute, offer for sale, and/or sell Unauthorized Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used, and continue to use the Sesame Street Trademarks and/or copies of the Sesame Street Copyrighted Works in connection with the advertisement, distribution, offering for sale, and sale of Unauthorized Products into the United States and Illinois over the Internet.

30. Monetary damages alone cannot adequately compensate Plaintiff for ongoing infringement because monetary damages fail to address the loss of control of and damage to Plaintiff's reputation and goodwill. Furthermore, monetary damages are difficult, if not impossible,

to completely ascertain due to the inability to fully quantify the monetary damage caused to Plaintiff's reputation and goodwill by acts of infringement.

31. Plaintiff's goodwill and reputation are irreparably damaged when the Sesame Street Trademarks are used in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff. Plaintiff's goodwill and reputation are also irreparably damaged when the Sesame Street Copyrighted Works are reproduced, distributed, and displayed to the public without its permission. Moreover, consumer brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

32. Plaintiff is further irreparably harmed by the unauthorized use of the Sesame Street Trademarks and Sesame Street Copyrighted Works because counterfeiters and infringers take away Plaintiff's ability to control the nature and quality of the Unauthorized Products. Loss of quality control over goods offered for sale or sold under the Sesame Street Trademarks or that copy the Sesame Street Copyrighted Works and, in turn, loss of control over Plaintiff's reputation is neither calculable nor precisely compensable.

33. The use of the Sesame Street Trademarks in connection with the offering for sale or sale of goods not authorized, produced, or manufactured by Plaintiff is likely causing and will continue to cause consumer confusion, which weakens Plaintiff's brand recognition and reputation. Consumers who mistakenly believe that the Unauthorized Products originate from Plaintiff will come to believe that Plaintiff offers low-quality products. Inferior quality products will result in increased skepticism and hesitance in consumers presented with Sesame Street Products, resulting in a loss or undermining of Plaintiff's reputation

and goodwill. Indeed, there is damage to Plaintiff's reputation and goodwill even if a consumer knows that the goods he or she is purchasing are counterfeit. Prospective consumers who see Unauthorized Products used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Plaintiff and its trademarks. Such post-sale confusion results in damage to Plaintiff's reputation and correlates to a loss of unquantifiable future sales.

34. Plaintiff is further irreparably damaged due to a loss of exclusivity. Sesame Street Products are meant to be exclusive. Plaintiff's extensive marketing efforts and distribution of Sesame Street Products are aimed at growing and sustaining sales of Sesame Street Products. The Sesame Street Trademarks are distinctive and signify to consumers that the products originate from Plaintiff and are manufactured to Plaintiff's high-quality standards. When counterfeiters use the Sesame Street Trademarks to offer for sale or sell goods without Plaintiff's authorization, the exclusivity of Sesame Street Products, as well as Plaintiff's reputation, are damaged and eroded, resulting in a loss of unquantifiable future sales.

35. Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on February   7th  , 2025, at London, United Kingdom.

    /s/ _____
    Paul Varley